UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN (DETROIT)

United States of America,

     Plaintiff,

v.                              Civil Action No.  2:21-cv-10620-MAG-KGA

Jeanisia Saquise Allen, et al,

     Defendants.

_____/

United States Department of Justice
Daniel A. Applegate (P70452)
Attorney for Plaintiff
P.O. Box 7238
Washington, D.C. 20044
(202) 353-8180
Daniel.A.Applegate@usdoj.gov

Goldstein, Bershad & Fried, P.C.
Aaron J. Scheinfield (P67495)
Attorney for Lamont Carter
4000 Town Center, Suite 1200
Southfield, MI 48075
(248) 355-5300
aaron@bk-lawyer.net
_____/

## LAMONT CARTER'S MOTION TO QUASH SUBPOENA

    NOW COMES LAMONT CARTER, by and through his attorneys, Goldstein, Bershad & Fried, P.C.,

and herein moves to quash to the Subpoena issued by Plaintiff, pursuant to Federal Rule of Civil Procedure

45(d)(3)(A).  In support of the Motion to Quash Subpoena, Lamont Carter ("Carter") relies upon the attached

Brief.

                              Respectfully Submitted,

                              Goldstein, Bershad & Fried, P.C.

                              /s/ Aaron J. Scheinfield
                              Aaron J. Scheinfield (P67495)
                              Attorney for Lamont Carter
                              4000 Town Center, Suite 1200
                              Southfield, MI 48075
                              (248) 355-5300
                              aaron@bk-lawyer.net

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN (DETROIT)

United States of America,

   Plaintiff,

v.           Civil Action No.  2:21-cv-10620-MAG-KGA

Jeanisia Saquise Allen, et al,

   Defendants.

_____/

United States Department of Justice
Daniel A. Applegate (P70452)
Attorney for Plaintiff
P.O. Box 7238
Washington, D.C. 20044
(202) 353-8180
Daniel.A.Applegate@usdoj.gov

Goldstein, Bershad & Fried, P.C.
Aaron J. Scheinfield (P67495)
Attorney for Lamont Carter
4000 Town Center, Suite 1200
Southfield, MI 48075
(248) 355-5300
aaron@bk-lawyer.net

_____/

## BRIEF IN SUPPORT OF LAMONT CARTER'S MOTION TO QUASH SUBPOENA

   NOW COMES Lamont Carter, by and through his attorneys, Goldstein Bershad & Fried PC,

and for its Brief in Support of Lamont Carter's Motion to Quash Subpoena, states as follows:

### INTRODUCTION AND BACKGROUND

   Lamont Carter was served with a subpoena for production of documents on February 8,

2022 ("Subpoena"). See **Exhibit 1** - Subpoena. Based on the voluminous number and category of

documents requested, a compliance date of February 28, 2022 is not feasible. Moreover, Mr.

1

Carter is a business owner involved in, *inter alia*, a full time home health care agency coupled

with preparation of tax returns and this is his busy season. Gathering, reviewing, locating and

complying with the subpoena in its current format would be unduly burdensome, time intensive

and costly to comply with the subpoena in its current format. See **Exhibit 2** - Affidavit of

Lamont Carter.

Carter raises the following objections to the Subpoena pursuant to Federal Rule of Civil

Procedure 45

> 1. The Subpoena does not allow a reasonable time to comply.
> 2. The Subpoena is unduly burdensome.
> 3. The cost of compliance with the Subpoena will impose an undue burden and expense.
> 4. The Subpoena is overly broad and calls for production of documents that are irrelevant to the claims and defenses raised in the litigation or duplicative to documents that will be obtained from the parties to the litigation.
> 5. The Subpoena is vague and ambiguous.
> 6. The Subpoena seeks the production of documents that are protected by the work product doctrine or the accountant-client privilege.
> 7. The Subpoena seeks the production of documents that are otherwise privileged, confidential, proprietary, trade secrets, or contain sensitive information.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 45 "explicitly contemplates the use of subpoenas

in relation to non-parties" and governs subpoenas served on a third party, such as

Carter, as well as motions to quash or modify or to compel compliance with such a

subpoena. *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex.

2009). Federal Rule of Civil Procedure 34 governs requests for production of documents

and electronically stored information ("ESI") from a party and explains that, "[a]s

2

provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." FED. R. CIV. P. 34(c).

"[T]he person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost"; "[o]n motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost"; "[i]f that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of [Federal Rule of Civil Procedure] 26(b)(2)(C)"; and "[t]he court may specify conditions for the discovery." FED. R. CIV. P. 45(e)(1)(D); see also FED. R. CIV. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).") (as amended effective December 1, 2015).

Rule 45(d)(1) mandates that " [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and that "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party

or attorney who fails to comply." FED.R.CIV.P.45(d)(1). Further, Rule 34 provides that

a document request "must describe with reasonable particularity each item or category

of items to be inspected" or produced. FED. R. CIV. P. 34(b)(1)(A). Although Rule 34

governs document discovery from a party and not a non-party, see FED. R. CIV. P. 34(c),

this reasonable particularity requirement should apply with no less force to a

subpoena's document requests to a non-party, see generally *Wiwa v. Royal Dutch*

*Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

Courts have also held that "'the failure to act timely will not bar consideration of

objections in unusual circumstances and for good cause shown.'" *Bell Inc. v. GE Lighting, LLC*,

No. 6:14-cv-00012, 2014 WL 1630754, at *9 (W.D. Va. Apr. 23, 2014) (quoting Leader *Techns.,*

*Inc. v. Facebook, Inc.*, No. C1080028MISCJWHRL, 2010 WL 761296, at *2 (N.D. Cal. Mar. 2,

2010)). Courts have also found find such unusual circumstances where (1) the subpoena is

overbroad on its face and exceeds the bounds of fair discovery or (2) the subpoenaed witness is a

non-party acting in good faith. See, e.g., *Concord Boat*, 169 F.R.D. at 48 (collecting cases).

"If an objection is made, the following rules apply: (i) At any time, on notice to

the commanded person, the serving party may move the court for the district where

compliance is required for an order compelling production or inspection. (ii) These acts

may be required only as directed in the order, and the order must protect a person who

is neither a party nor a party's officer from significant expense resulting from

compliance." FED. R. CIV. P. 45(d)(2)(B). Timely serving written objections therefore

suspends the non-party's obligation to comply with a subpoena commanding production

of documents, pending a court order. See FED. R. CIV. P. 45(d)(2)(B)(ii); *Hodnett v.*

4

*Smurfit-Stone Container Enters., Inc.*, Civ. A, No. 09-1256, 2010 WL 3522497, at *1 n.3 (W.D. La. Sept. 2, 2010).

The target of a Rule 45 subpoena can also file a motion to quash or modify the subpoena. Under Federal Rule of Civil Procedure 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

Where a subpoenaed party asserts undue burden, that party "has the burden of proof to demonstrate 'that compliance with the subpoena would be unreasonable and oppressive.'" *Wiwa*, 392 F.3d at 818 (quoting *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)) (internal quotation marks omitted). The party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. See *S.E.C. v. Brady*, 238 F.R.D. 429, 437-38 (N.D. Tex. 2006); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005). "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Wiwa,* 392 F.3d at 818 (internal quotation marks and footnote omitted). "To determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors: (1) relevance

of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." Id. (footnote omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." Id. (footnote omitted).

"When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *Williams*, 178 F.R.D. at 110. Rule 26(b)(1) has been amended, effective December 1, 2015, to provide that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

Further, the Court "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818 (footnote omitted). Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests "seek all documents concerning the parties to [the

6

underlying] action, regardless of whether those documents relate to that action and

regardless of date"; "[t]he requests are not particularized"; and "[t]he period covered

by the requests is unlimited." *In re O'Hare, Misc. A.* No. H-11-0539, 2012 WL 1377891,

at *2 (S.D. Tex. Apr. 19, 2012); accord *Turnbow v. Life Ptrs., Inc.*, No. 3:11-cv-1030-M,

2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013).

Additionally, Rule 45(d)(3)(B) provides that, "[t]o protect a person subject to or

affected by a subpoena, the court for the district where compliance is required may, on

motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or

other confidential research, development, or commercial information...." FED. R. CIV.

P. 45(d)(3)(B)(1). But "the court may, instead of quashing or modifying a subpoena,

order appearance or production under specified conditions if the serving party: (i)

shows a substantial need for the testimony or material that cannot be otherwise met

without undue hardship; and (ii) ensures that the subpoenaed person will be

reasonably compensated." FED. R. CIV. P. 45(d)(3)©.

## ARGUMENT

1.      Undue Burden / Overbreadth

The documents requested in the subpoena are unduly burdensome and overbroad. The

government's subpoena contains forty-one (41) long, detailed paragraphs spanning more than

eleven (11) pages requesting a voluminous number of documents pertaining to four (4) business

entities from 2013 to present – over a nine (9) year period!

The document requests speak in all encompassing terms using the word "all

documentation and information...", "all training materials", etc. The Subpoena fails to speak in

specific terms and does not establish that the documents requested are necessary for prosecution of the instant matter and cannot be obtained from the Defendants or other parties.

In order to appropriately respond to same and determine what, if any, documents are available to satisfy Plaintiff's requests, Mr. Carter would need to hire additional office staff to assist and comply with the short deadline. Further, the subpoenaed party would need to purchase office supplies to comply with the document requests; extensive, voluminous documents and files would need to be copied and scanned; Carter would need to contact a tax software company simply to request current and prior client files. In addition, files would then need to be separated to remove any information that does not comply with or fall within the scope of the subpoena. Finally, all of the requested extensive list of documents would need to be physically located and printed separately.

Carter shall be required to only turnover those documents in his possession, custody and/or control. Many of the tax files relevant to clients serviced were only required to be retained by Carter for three (3) years.

2. Privileged and Proprietary Documents and Need for Protective Order

The tax, financial and other business documents requested by the government contain very private, confidential, privileged and sensitive personal and financial information from Mr. Carter's current and/or former clients and/or association with the business entities referenced in the Subpoena. If the Court is inclined to permit production of the documents requested by the government, Carter requests that this Court modify the subpoena and enter a protective order with regard to proprietary, confidential, private and sensitive in possession of Carter.

3. Reasonable Time to Comply

8

The Subpoena failed to allow a reasonable time to comply where the Subpoena gave Carter only twenty (20) days, upon being served, to prepare for production in the manner demanded, and produce the documents. Time would be needed to hire part-time employees, request electronic files from cloud based tax software company for all relevant tax years.

Further, Carter currently runs a home health care agency and does tax preparation on the side. He has very limited availability based on his work schedule based on same. Further, Carter's main business is very demanding with responsibilities as a caregiver coupled with the fact that his clients and employees require extra time and attention given the amount of restrictions due to the COVID-19 pandemic.

4. Cost and Fee Shifting

"Rule 45 provides additional protections to nonparties to ensure they do not suffer an undue burden or significant expense resulting from compliance" and that, "[i]n balancing these protections against a party's need for discovery and the general assumption that the complying party bears the costs of production, courts have used a multi-step inquiry to determine the equity of shifting costs," the factors of which "include: '(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance.'" *Bell*, 2014 WL 1630754, at *12 (quoting *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 928-29 (N.D. Ill. 2010)).

The documents requested are cost prohibited. In order to conduct due diligence and properly comply with same, Mr. Carter would have potentially have to spend thousands of dollars to locate, secure, pay professionals, order and print said financial and business

9

documents. Compliance with the Subpoena would require Carter to hire additional help consisting of a minimum of two (2) part-time employees at thirty (30) hours per week at $13.50 per hour to review files, documents, etc; the wages could easily reach $800.00 per week to pay said employees. Office supplies estimated at $1,500.00 would need to be purchased such as paper, ink, folders, staples, etc.

## CONCLUSION

Based on the aforementioned facts and authority contained herein, Carter requests that the Court quash the Subpoena pursuant to FRCP 45.

Respectfully Submitted,

Goldstein, Bershad & Fried, P.C.

/s/ Aaron J. Scheinfield
Aaron J. Scheinfield (P67495)
Attorney for Lamont Carter
4000 Town Center, Suite 1200
Southfield, MI 48075
(248) 355-5300
aaron@bk-lawyer.net

# EXHIBIT 1

AO 88B (Rev 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

| United States of America | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | Civil Action No.   2:21-cv-10620 |
| Jeanisia Saquise Allen, et al. | ) | |
| Defendant | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Lamont Carter
29600 Franklin Rd. Apt. 38, Southfield, MI 48034

*(Name of person to whom this subpoena is directed)*

☒ *Production:* YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attachment. In lieu of producing responsive documents in-person at the place and time listed below, you may send documents to the undersigned by mail pursuant to the instructions in the attachment.

| Place: U.S. Attorney's Office <br> 211 W. Fort Street, Ste. 2001 <br> Detroit, MI 48226 | Date and Time: <br><br> 02/28/2022 10:00 am |
|---|---|

☐ *Inspection of Premises:* YOU ARE COMMANDED to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached -- Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   02/01/2022

CLERK OF COURT

OR

_____     /s/ Daniel A. Applegate
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
United States of America                                          , who issues or requests this subpoena, are:
Daniel A. Applegate, U.S.Dept. of Justice, P.O. Box 7238,Washington, D.C. 20044; Daniel.A.Applegate@usdoj.gov;
202-353-2150

Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:21-cv-10620

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
(A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).



**U.S. Department of Justice**

*Trial Attorney: Daniel A. Applegate*
*Attorney's Direct Line:202-353-8180*
*Fax No. 202-514-6770*

**Tax Division**
*Please reply to:*   *Civil Trial Section, Central Region*
                  *P.O. Box 7238*
                  *Washington, D.C. 20044*

DAH:RSC:DAApplegate
DJ 5-37-12755
CMN 2019100945

February 1, 2022

Recipient of Subpoena for Documents

Re:     *United States v. Jeanisia Allen, et al.*
          *Case No. 2:21-cv-10620 (E.D. Mich.)*

To whom it may concern:

    I am writing regarding your production of documents in response to the subpoena served on you in the above-captioned case.

    Due to the Covid-19 national emergency, the United States Attorney's Office in Detroit is not currently open to the public and generally not accepting most personal service of documents. Therefore, the documents requested in the attachment to the subpoena should be mailed to the undersigned pursuant to the instructions in the attachment at one of the addresses below.

    Documents (including those maintained electronically on a CD/DVD or flash drive) sent by U.S. Mail should be sent to:

Daniel A. Applegate
Trial Attorney, Tax Division, U.S. Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044

    Documents (including those maintained electronically on a CD/DVD or flash drive) sent by FedEx or UPS should be sent to the following address:

Daniel A. Applegate
Trial Attorney, Tax Division, U.S. Department of Justice
1275 1st Street, NE
Room 10818
Washington, DC 20002

## ATTACHMENT TO SUBPOENA

The documents can be provided in either paper or electronic format.  If you wish to produce the documents electronically, please save them onto a CD, DVD, or flash drive and send the disk or drive to me by mail or FedEx/UPS at the appropriate address.

Please produce the following documents, for the time period from January 1, 2013, to the present, unless otherwise stated:

1.  Copies of all federal tax returns (original and/or amended) and IRS forms that you personally prepared, signed, and/or filed during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

2.  Copies of all federal tax returns (original and/or amended) and IRS forms filed, signed, and/or prepared at any tax preparation business or store that you owned, licensed, franchised, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

3.  Complete "customer files" or other document files maintained by you, or maintained at any tax preparation business or store that you owned, licensed, franchised, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

4.  All documentation and information, whether stored in "customer files," electronically in tax preparation software, on a computer or other electronic device, or in another format, supporting or substantiating the claims, credits,

wages, expenses, and/or any other information reported on the federal tax returns and IRS forms filed, prepared, and/or signed by you and anyone at any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts. This includes, but is not limited to, Forms W-2, Forms 1099, Forms 1098-T, documents provided by customers such as invoices or receipts, records of communications with customers, and forms or documents completed by customers.

5. All documents reflecting the amounts paid to Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. by each customer at any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled for the preparation, filing, and/or signing of their federal tax return(s). This includes documents showing how the individual or entity made the payment, to whom or what entity the payment was made, a description of the services provided for such payment, how such payment was calculated, and when the individual or entity made the payment.

6. All franchising agreements, contracts, and contract addendums between you and Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc.

7. All employment agreements, contracts, or independent contractor agreements for managers, employees, or contractors of you or any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

8. All documents identifying the owners, managers, franchisees, investors, and employees of you or any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period

which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

9. Any correspondence between the Internal Revenue Service and: 1) you; 2) any tax preparation business or store that you owned, franchised, licensed managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts; and 3) any owner, manager, franchisee, or employee of any tax preparation business or store that you owned, franchised, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

10. All documents showing the Electronic Filing Identification Numbers (EFINs) registered to or used by you and any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

11. Documents identifying all customers of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

12. All leases or real estate contracts related to the tax return preparation office spaces or stores leased, rented, or owned by you and any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled.

13. All correspondence, including electronically stored information including emails, text messages, social media messages (such as through Facebook and Twitter), and electronic messages (such as through WhatsApp or any other electronic communication platform), related to the filing, preparing, or signing of federal tax returns between customers and you or any owner, franchisee, employee, or manager of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

14. All training materials, instructional materials, scripts, cheat sheets, tests, quizzes, study guides, and instructions or directions used or relied on (or intended to be used or relied on) by you or any owner, franchisee, licensee, employee, or manager of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts, *when preparing tax returns.*

15. All training materials, instructional materials, scripts, cheat sheets, tests, quizzes, study guides, tax preparation guides, checklists, handbooks, and instructions or directions used or relied on (or intended to be used or relied on) by you or any owner, franchisee, licensee, employee, or manager of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership,

licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

16. All training materials, instructional materials, scripts, cheat sheets, tests, quizzes, study guides, tax preparation guides, checklists, handbooks, and instructions or directions that you created, used, or relied on, or that you intended to be used or relied on by you or any owner, franchisee, licensee, employee, or manager of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts, *when communicating with customers or potential customers, or when preparing tax returns*.

17. All training materials, instructional materials, scripts, cheat sheets, tests, quizzes, study guides, tax preparation guides, checklists, handbooks, and instructions or directions that you created, used, relied on (or that you intended to be used or relied on), or provided to any owners, franchisees, managers, or employees of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts, *relating to how to prepare tax returns*.

18. All training materials, instructional materials, scripts, cheat sheets, tests, quizzes, study guides, tax preparation guides, checklists, handbooks, and instructions or directions that you created, used, relied on (or that you intended to be used or relied on), or provided to any owners, franchisees, licensees, managers, or employees of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control

of a tax preparation business or store, including but not limited to The Tax Experts, *relating to owning, operating, franchising, licensing, managing, overseeing, or running a tax preparation business, store, or franchise.*

19. All e-mails, letters, text messages, social media messages, electronic messages, and other correspondence between you and Jeanisia Allen or any owner, manager, franchisor, franchisee, licensor, licensee, or employee of Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the filing, preparing, or signing of federal tax returns by any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled.

20. All e-mails, letters, text messages, social media messages, electronic messages, and other correspondence between you and Jeanisia Allen or any owner, manager, franchisor, franchisee, licensor, licensee, or employee of Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. regarding this lawsuit or any other federal or state investigation into Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, Top Notch Taxes Inc., or The Tax Experts.

21. All e-mails, letters, text messages, social media messages, electronic messages, and other correspondence between you and Jeanisia Allen or any owner, manager, franchisor, franchisee, licensor, licensee, or employee of you, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. regarding the fees charged, received, or paid related to the filing, preparing, or signing of federal tax returns by any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled.

22. All e-mails, letters, text messages, social media messages, electronic messages, and other correspondence between you and Jeanisia Allen or any owner, manager, franchisor, franchisee, licensor, licensee, or employee of Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. regarding the training or instruction of any owner, manager, franchisee, licensee, or employee of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled, *about the ownership, franchising, licensing, operation, oversight, or management of a tax preparation business or store.*

23. All e-mails, letters, text messages, social media messages, electronic messages, and other correspondence between you and Jeanisia Allen or any owner, manager, franchisor, franchisee, licensor, licensee, or employee of Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. regarding the training or instruction of any owner, manager, franchisee, licensee, or employee of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled, *about marketing to customers or potential customers and communicating with customers or potential customers.*

24. All e-mails, letters, text messages, social media messages, electronic messages, and other correspondence between you and Jeanisia Allen or any owner, manager, franchisee, or employee of Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. containing, attaching, or providing training materials, instructional materials, scripts, cheat sheets, guides, checklists, or handbooks used or relied on (or intended to be used or relied on) when preparing tax returns, marketing to customers or potential customers, or communicating with customers or potential customers.

25. All advertisements, marketing materials, applications, and contracts for any "bank products," including tax refund processing, debit cards, loans, same day refunds, refund anticipation loans, refund advances, or similar products used, offered, advertised, marketed or sold by you or any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

26. All agreements or contracts between you or any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled and any bank or financial institution related to any "bank products" including tax refund processing, debit cards, loans, same day tax refunds, refund anticipation loans, refund advances, or similar products used, offered, advertised, marketed or sold by you or any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled

during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

27. All documents identifying the providers or licensors of tax preparation software used by any any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

28. All documents identifying the providers or licensors of any "bank products" including tax refund processing, tax preparation fee processing, debit cards, loans, same day tax refunds, refund anticipation loans, refund advances, or similar products used, offered, advertised, marketed or sold by you or any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

29. All business licenses or business registrations for any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

30. All documents reflecting the email addresses used by you in connection with preparing tax returns or owning, operating, franchising, licensing, or controlling a tax preparation business, and by any tax preparation business or

store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

31. All documents showing any training regarding the preparation of federal income tax returns provided by third parties to you or any franchisees, licensees, owners, managers, or employees of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

32. All documents reviewed by any third party as part of any training regarding the preparation of federal income tax returns provided by such third party to you or any franchisors, franchisees, licensors, licensees, owners, managers, or employees of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

33. All documents created by any third party as part of any training provided by such third party to you or any franchisees, licensees, owners, managers, or employees of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

regarding the preparation of federal income tax returns, including but not limited to reports, recommendations, handbooks, and training materials.

34. All documents reviewed by any third party (other than the IRS) as part of any independent audits or reviews of federal income tax returns prepared by you or any franchisees, licensees, owners, managers, or employees of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

35. All documents created by any third party as part of any independent audits or reviews of federal tax returns prepared by you or any franchisees, licensees, owners, managers, or employees of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts, such as reports, recommendations, handbooks, memoranda of interviews, and interview notes.

36. All documents, including employment agreements, independent contractor agreements, and contracts, showing the percentage of the tax preparation fees, sales, or income generated at or by a tax preparation store or business that you owned, franchised, licensed, managed, or otherwise controlled that Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. received or were entitled to receive.

37. All documents, including employment agreements, independent contractor agreements, and contracts, showing the capital, franchising fees, salary, hourly wages, per-return fees, or other remuneration that Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. received or were entitled to receive as an owner, franchisor, franchisee, licensor, licensee, investor, independent contractor,

manager, or employee of a tax preparation store or business that you owned, franchised, licensed, managed, or otherwise controlled.

38. All documents showing any policies or procedures regarding the preparation or filing of tax returns and the authorization to prepare and file tax returns (and scope of that authorization) provided to you by Jeanisia Allen or any franchisors, franchisees, licensors, licensees, owners, managers, or employees of First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc.

39. All documents showing any policies or procedures regarding 1) quality control measures; 2) any review of tax returns; and 3) any review or oversight of tax return preparation by you and any franchisees, licensees, owners, managers, or employees of any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts, *when preparing or filing tax returns at any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled.*

40. All promotional and marketing materials (whether in paper, electronic, digital, audio, or other format) provided to you by Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc.

41. All documents and materials (whether in paper, electronic, digital, audio, or other format) showing how, where, when, and to whom you advertised, marketed, franchised, and sold any tax preparation business or store that you owned, franchised, licensed, managed, or otherwise controlled during the time period which you were a party to a contract or an agreement with Jeanisia Allen, First Choice Tax Solutions, LLC, The Tax Experts, Inc., The Tax Experts, LLC, or Top Notch Taxes Inc. related to the preparation of tax returns or the ownership, licensing, franchising, management, or control of a tax preparation business or store, including but not limited to The Tax Experts.

To facilitate your delivery of the documents, if you have large boxes of documents to produce, please contact me, tell me how many boxes you have, and I can send you a pre-paid FedEx shipping label to attach to the box(es) for mailing. You may then drop the box(es) off at a FedEx location or arrange for FedEx to pick up the box(es).

If you have boxes for which you need a pre-paid FedEx shipping label, or if you have any other questions, please email me at daniel.a.applegate@usdoj.gov or call me at 202-353-8180.

Sincerely yours,

s/ Daniel A. Applegate

DANIEL A. APPLEGATE
Attorney
Civil Trial Section, Central Region

2

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN (DETROIT)

United States of America,

     Plaintiff,

v.                              Civil Action No.  2:21-cv-10620-MAG-KGA

Jeanisia Saquise Allen, et al,

     Defendants.

_____/

United States Department of Justice
Daniel A. Applegate (P70452)
Attorney for Plaintiff
P.O. Box 7238
Washington, D.C. 20044
(202) 353-8180
Daniel.A.Applegate@usdoj.gov

Goldstein, Bershad & Fried, P.C.
Aaron J. Scheinfield (P67495)
Attorney for Lamont Carter
4000 Town Center, Suite 1200
Southfield, MI 48075
(248) 355-5300
aaron@bk-lawyer.net

_____/

**AFFIDAVIT OF LAMONT CARTER IN SUPPORT OF
MOTION TO QUASH SUBPOENA**

       NOW COMES Lamont Carter, in support of the Motion to Quash Subpoena and Brief in support of same:

1.     I have read, reviewed and agree within the content contained within the Motion to Quash Subpoena and Brief in support of same ("Motion and Brief").

2.     For the reasons outlined in the Motion and Brief, I agree that the documents requested within the subpoena issued by Plaintiff is unduly burdensome, overbroad, contains privileged, sensitive information and would impose an undue expense to comply with same.

I assert that the above information is true and correct under penalty of perjury.

_____
Lamont Carter

Subscribed and sworn to before me
This 23 day of February, 2022

_____
JENNIFER L. GAMALSKI, Notary Public
Oakland County, acting in Oakland County
State of Michigan
My commission expires: Jan. 13, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN (DETROIT)

United States of America,

     Plaintiff,

v.                              Civil Action No.  2:21-cv-10620-MAG-KGA

Jeanisia Saquise Allen, et al,

     Defendants.

_____/

United States Department of Justice
Daniel A. Applegate (P70452)
Attorney for Plaintiff
P.O. Box 7238
Washington, D.C. 20044
(202) 353-8180
Daniel.A.Applegate@usdoj.gov

Goldstein, Bershad & Fried, P.C.
Aaron J. Scheinfield (P67495)
Attorney for Lamont Carter
4000 Town Center, Suite 1200
Southfield, MI 48075
(248) 355-5300
aaron@bk-lawyer.net

_____/

### CERTIFICATE OF SERVICE

     I hereby certify that on February 24, 2022 I electronically filed the following papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following ECF Participants:

| Documents Filed: | Lamont Carter's Motion to Quash Subpoena, Brief in Support, Exhibits 1 and 2 and this Certificate of Service |
|---|---|
| ECF Participants: | All parties listed by the Court for service via electronic mailing |

     And I hereby certify that I have mailed the above documents by United States Postal Service to the following non-ECF participants:

NONE

/s/ Jennifer L. Gamalski
Jennifer L. Gamalski
4000 Town Center, Suite 1200
Southfield, MI 48075
Phone:         (248) 355-5300
Fax:           (248) 355-4644
Aaron J. Scheinfield P67594
email aaron@bk-lawyer.net

Dated: February 24, 2022