UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Case No. 21-cv-10620

vs.

HON. MARK A. GOLDSMITH

JEANISIA SQUARE ALLEN, et al.,

        Defendants.
_____/

**OPINION & ORDER**
**GRANTING IN PART THIRD-PARTY'S MOTION TO QUASH SUBPOENA (Dkt. 33)**

The matter before the Court is third-party Lamont Carter's motion to quash a subpoena issued by Plaintiff the Government (Dkt. 33). For the reasons that follow, the Court grants Carter's motion in part and directs the Government and Carter to submit a stipulated order regarding Carter's compliance with the subpoena or a joint statement setting out their respective positions.[1]

**I. BACKGROUND**

Defendant Jeanisia Saquisse Allen allegedly owns, operates, and franchises a tax return preparation business known as The Tax Experts, both individually and through multiple co-defendant entities of which Allen is a member or registered agent. See Compl. ¶¶ 6–10 (Dkt. 1). The Government alleges that Defendants made fraudulent statements to customers and potential customers and prepared fraudulent tax returns in violation of 26 U.S.C. §§ 6700 and 6701, prompting its suit for injunctive relief and disgorgement under 26 U.S.C. §§ 7408 and 7402(a).

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to Carter's motion, the briefing includes the Government's response (Dkt. 35).

1

See id. ¶¶ 129–155. The Government alleges that as many as 32 individual tax preparation stores operated as franchisees to The Tax Expert pursuant to agreements identified as "License Agreements." Id. ¶¶ 10–11, 10 n.1.

On a motion filed by the Government, this Court issued an order directing Defendants to make a demand for documents responsive to the Government's requests on all persons or entities on whom Defendants were entitled to make such a demand, including The Tax Experts's franchisees. See 12/3/21 Order (Dkt. 27). Defendants were required to produce any documents they received pursuant to these demands to the Government. Id. However, no third-parties provided any documents in response to these demands. See Resp. at 2–3. Still in need of responsive documents outside of Defendants' control, the Government began issuing subpoenas to third-parties. Id. at 3. One such third-party is Carter, who potentially holds responsive documents due to his having retained customer files after working with The Tax Experts as one of its franchisees. Id. at 4, 8.

The Government issued a subpoena to Carter under Federal Rule of Civil Procedure 45 on February 1, 2022, and the subpoena was served on Carter on February 7. Id. at 3.[2] Production was originally due by February 28, but after speaking with Carter on February 14, the Government granted him an extension until March 14. Id. at 3–5. Carter filed the present motion to quash the Government's subpoena on February 24. See Mot.

## II. ANALYSIS

"A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." United States v. Blue Cross Blue Shield of Mich., No. 10-14155, 2012

---

[2] The subpoena itself is contained within Carter's motion. See Mot. at PageID.382–394.

WL 4513600, at *5 (E.D. Mich. Oct. 1, 2012). Pursuant to Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The scope of discovery allowed under the Federal Rules of Civil Procedure, including Rule 26, is "traditionally quite broad." Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 402 (6th Cir. 1998).

Carter brings multiple challenges to the Government's subpoena, and the Government responds by challenging the grounds for Carter's motion. The Court addresses each argument in turn.

### A. Timeliness of Motion

As an initial matter, the Government observes that Carter's motion is untimely. An objection to the production of documents pursuant to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). Carter was served on February 7, 2022 and so any objections were due, at the latest, by February 21. Carter filed his motion to quash on February 24. This failure to object on a timely basis "typically constitutes a waiver of such objections." Am. Elec. Power Co. v. United States, 191 F.R.D. 132, 136 (S.D. Ohio 1999).

However, courts "can consider untimely objections in unusual circumstances and when good cause exists." Zamorano v. Wayne State Univ., No. 07-12943, 2008 WL 597224, at *1 (E.D. Mich. Mar. 3, 2008) (citing Am. Elec. Power, 191 F.R.D. at 136). Specifically, courts allow

untimely objections to a Rule 45 subpoena where "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness's compliance prior to the time the witness challenged the legal basis for the subpoena." Id. (citing Am. Elec. Power, 191 F.R.D. at 136–137). Both the Government and Carter acknowledge this standard. See Mot. at 4; Resp. at 7.

The Court finds that Carter's circumstances justify affording him leniency for having filed three days late. Most notably, Carter is not a party to this litigation, and "the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances." Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422, 424 (Fed. Cir. 1993). As the Government explains, it has been in contact with Carter regarding his compliance with the subpoena, and Carter obtained counsel following that communication. See Resp. at 3–5. The Court sees no reason to doubt that Carter acted in good faith by communicating with the Government about an action to which he was not a party and then filing a motion to quash a few days late, after he had secured representation. Additionally, the Government suffers no prejudice from the delay. The Court will consider Carter's motion.[3]

---

[3] The first factor—that the subpoena is overly broad on its face—is not present in this case. However, courts have decided against executing "a strict application of Rule 45(c)(2)(B)'s 14-day deadline for objections"—even where subpoenas were not facially overbroad—in circumstances where non-parties objected in good faith and were in communication with the subpoenaing parties regarding compliance. Powell v. Time Warner Cable, Inc., No. 2:09-CV-00600, 2010 WL 5464895, at *4 (S.D. Ohio Dec. 30, 2010); see also Zamorano, 2008 WL 597224, at *2 (finding that "non-party to the litigation who made a good-faith attempt to timely object" had not waived her objections, without analyzing whether subpoena was over-broad on its face); Strand v. USANA Health Scis., Inc., No. 217CV00925HCNPMW, 2020 WL 33443, at *2 (D. Utah Jan. 2, 2020).

### B. Overbreadth and Relevance

Carter argues that the Government's document request is "overbroad." Mot. at 7. He notes that the subpoena contains 41 "long, detailed paragraphs" spanning over 11 pages and requesting a "voluminous number of documents" pertaining to four business entities from between 2013 and the present. Id. Carter also observes that the requests "speak in all[-]encompassing terms," including by requesting "all" documents in certain categories. Id. Carter states that the subpoena "fails to speak in specific terms and does not establish that the documents requested are necessary for prosecution of the instant matter and cannot be obtained from the Defendants or other parties." Id. at 7–8.

The Government responds that all of the documents it seeks are "relevant to the allegations in the complaint pertaining to tax preparation practices and the promotion and sale of a tax arrangement." Resp. at 8. The Government aims to demonstrate that Defendants engaged in conduct subject to penalty under § 6700, which requires a showing that Defendants organized a plan or arrangement—or participated in the sale of an interest in such a plan or arrangement—and made or caused to be made either (i) a statement relating to tax benefits deriving from participating or holding an interest in that plan or arrangement which Defendants knew or had "reason to know [was] false or fraudulent as to any material matter," or (ii) "a gross valuation overstatement as to any material matter." 26 U.S.C. § 6700(a). The Government also alleges that Defendants engaged in conduct subject to penalty under § 6701, which requires a showing that Defendants (i) aided or assisted in, procured, or advised with respect to "the preparation or presentation of any portion of a return, affidavit, claim, or other document"; (ii) knew or had reason to believe "that such portion will be used in connection with any material matter arising under the internal revenue laws"; and

5

(iii) knew "that such portion (if so used) would result in an understatement of the liability for tax of another person." 26 U.S.C. § 6701(a).

The Government contends that the documents requested are relevant to these claims because customer files potentially held by Carter will show whether the false claims made on tax returns at Defendants' stores are "actually based on information provided by customers" or "created out of whole cloth by the Defendants' tax return preparers." Resp. at 10–11. Additionally, "[c]ommunications between the Defendants and franchisees and tax return preparers directly relate to whether the Defendants aided, advised, or assisted in the preparation of tax returns that would understate customers' income tax liabilities." Id. at 11. The Government explains in detail why each of the 41 categories of documents it seeks are relevant to its claims. See id. at 11–18.[4]

---

[4] The Government seeks the following categories of documents:
  i. copies of tax returns that Carter prepared, signed, or filed, or assisted in preparing, or that were prepared or filed at any tax preparation business he controlled while party to an agreement with Defendants (categories 1 and 2);
  ii. "customer files" (categories 3 and 4);
  iii. documents showing the amounts paid to the Defendants for the preparation, filing, and/or signing of federal tax returns (category 5);
  iv. franchise agreements, employment agreements, and other documents related to the business relationship between Defendants and franchisees and between Defendants and Carter's employees (categories 6 and 7);
  v. documents identifying the owners, managers, franchisees, investors, and employees of Carter or his tax preparation store (category 8);
  vi. communications between Carter and anyone working at his store and the Internal Revenue Service (category 9);
  vii. documents showing the Electronic Filing Identification Numbers that Carter and his tax preparation store used when filing tax returns (category 10);
  viii. documents identifying customers of Carter and his tax preparation store (category 11);
  ix. leases or real estate contracts sufficient to identify all of Carter's (and the Defendants') tax preparation store locations, the years the stores operated, and who may have exercised control over those stores through the leases (category 12);
  x. correspondence between Carter and the Defendants regarding the preparation of tax returns (category 13);

The Government also states that the documents sought are "proportional to the claims in this case" and that the subpoena is "not overly broad." Id. at 10, 18. The Government posits that the use of the word "all" does not indicate that the request is overbroad, and, rather, this qualifier "merely ensures that all responsive documents in these categories are produced and that no responsive documents are withheld due to linguistic gamesmanship." Id. at 19. The Government

---

xi. various training and instructional materials used, created, and disseminated by the Defendants and their franchisees and employees at their tax preparation business related to tax return preparation, communicating with customers, and owning, operating, and franchising a tax preparation business (categories 15–18);
xii. records of communications between the Defendants and Carter and franchisees, owners, and employees of their tax preparation business pertaining to specified topics including preparation of tax returns, the fees charged for preparing tax returns, training provided, and documents used for communicating with customers or preparing tax returns (categories 19–24);
xiii. advertisements, marketing materials, and third-party loan documents or contracts used by the Defendants and their business (category 25);
xiv. agreements or contracts with any bank or financial institution regarding same day loans, refund advances, or other products that the Defendants and their business marketed or sold (category 26);
xv. records showing the identity of the providers or licensors of the tax preparation software and any "bank product" or refund processing services that the Defendants used (categories 27 and 28);
xvi. business licenses or registrations for Carter's tax preparation stores (category 29);
xvii. documents showing the email addresses that he and his store use (category 30);
xviii. documents pertaining to any oversight or training provided by third-parties (categories 31–35);
xix. documents showing the income and fees that the Defendants received or were entitled to receive related to Carter's tax preparation store or business (categories 36 and 37);
xx. documents showing policies or procedures regarding the preparation or filing of tax returns provided to franchisors, franchisees, owners, managers, or employees of any tax preparation business that the Defendants owned, franchised, managed, or otherwise controlled, as well as policies or procedures with respect to quality control and review of tax return preparation (categories 38 and 39); and
xxi. Defendants' promotional and marketing materials and documents showing how, where, when, and to whom the Defendants advertised, marketed, franchised, and sold any tax preparation business or store (categories 40 and 41).

See Resp. at 11–18; Mot. at PageID.382–394.

also notes that, while it seeks documents as early as January 1, 2013 because Defendants have not provided documents sufficient to determine the time frame during which Carter was a franchisee, "the length of Carter's business relationship with the Defendants (which the subpoena explicitly refers to as the period during which we seek documents) further limits the period of documents." Id.

The Court agrees with the Government that the subpoena requests materials that are relevant to its case—and may be necessary to its case, given the Government's inability to obtain these materials from other sources. The Court also agrees that the requests are proportional and not overbroad. A request for documents is not overbroad if "the breadth of the information sought is 'proportional the needs of the case.'" State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C., 315 F.R.D. 220, 222 (E.D. Mich. 2016) (quoting Fed. R. Civ. P. 26(b)(1)). As explained at length by the Government, the various categories of documents requested are designed to reach materials directly related to the Government's claims and potential defenses made by Defendants. Carter takes issue with the subpoena's use of terms like "all," but the Government is correct that "[t]he mere use" of a phrase like "any and all documents and things" does not suffice to "make the request per se overly broad." Robinson v. City of Arkansas City, Kan., No. 10-1431-JAR-GLR, 2012 WL 603576, at *8 (D. Kan. Feb. 24, 2012). Rather, "[t]he overall wording of a request determines whether it is overly broad." Id. The requests as written are not overly broad in this case.

The requested documents must be produced. The remaining questions concern how the costs will be split, what protections apply, and what timeframe is appropriate for production.

8

### C. Undue Burden and Cost-Shifting

Carter argues that the Government's subpoena is "unduly burdensome." Mot. at 7. Carter submits that, to comply with the Government's requests, he would have to "hire additional office staff"; "purchase office supplies"; copy and scan "extensive, voluminous documents and files"; "contact a tax software company simply to request current and prior files"; and "remove any information" outside the scope of the subpoena. Id. at 8.

Carter notes that courts allow for cost-shifting between the third-party and the requesting party to ensure an equitable distribution of costs for compliance with a Rule 45 subpoena. Id. at 9 (citing Bell Inc. v. GE Lighting, LLC, No. 6:14-CV-00012, 2014 WL 1630754, at *10 (W.D. Va. Apr. 23, 2014); DeGeer v. Gillis, 755 F. Supp. 2d 909, 928–929 (N.D. Ill. 2010)). Carter states that the documents requested are "cost prohibit[ive]" because compliance could potentially cost Carter thousands of dollars. Id. He estimates that the compliance would require that Carter (i) "hire additional help consisting of a minimum of two (2) part-time employees at thirty (30) hours per week at $13.50 per hour" to review the documents and (ii) purchase office supplies including "paper, ink, folders, staples, etc." at an estimated cost of $1,500. Id. at 9–10.

The Government counters that the subpoena does not constitute an undue burden or result in a significant expense. Resp. at 19–22. The Government submits that the need for Carter to conduct a review of documents for responsiveness does not make the subpoena unduly burdensome. Id. at 21–22 (citing Black & Veatch Int'l Co. v. Foster Wheeler Energy Corp., No. 00-2402-KHV, 2001 WL 1718295, at *5 (D. Kan. Dec. 28, 2001) ("Reviewing, or making available for review, thousands of documents all stored in one location does not constitute an undue burden.")).

The Government also reemphasizes that it cannot simply obtain the needed documents from Defendants, as it has already tried to do so through both document requests and an order for Defendants to demand the documents of its affiliates, and these efforts have failed. Id. at 21. Carter "is now the only source from which these specific documents may be obtained." Id.

The Government agrees with Carter, though, that it can share some of the costs of production. The Government has offered to pay the costs to have the documents delivered for copying, copied, and then returned to Carter. Id. at 22.

Given that the Government has requested relevant materials proportional to the needs of its case, Carter's provision of these materials to the Government is not an undue burden. However, the Court agrees with the Government and Carter that it is appropriate that the Government share in the costs of this production. "The relevant factors for determining how much of the production cost the requesting party must bear include whether the nonparty has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party, and whether the litigation is of public importance." Georgia-Pac. LLC v. Am. Int'l Specialty Lines Ins. Co., 278 F.R.D. 187, 190 (S.D. Ohio 2010) (punctuation modified, citation omitted); see also Hennigan v. Gen. Elec. Co., No. 09-11912, 2012 WL 13005370, at *2 (E.D. Mich. Apr. 2, 2012).

In this case, non-party Carter has no interest in the outcome. Carter also maintains that he runs his own business and that the expense of managing a document production is cost prohibitive. Mot. at 1, 9. The Court agrees that the Government—a party to this action in need of the requested documents—is better positioned to bear that expense. The Court, therefore, directs the Government and Carter to submit a proposed stipulated order providing terms by which the Government will cover reasonable costs for Carter's production in response to the Government's subpoena. These reasonable costs must include the costs of delivering and copying responsive

documents, as well as costs associated with the clerical work of identifying and organizing responsive documents. If the Government and Carter cannot agree on a breakdown of costs, then they are directed to file a joint statement setting out their respective positions.

### D. Privileged and Proprietary Documents

Carter states that the subpoena seeks documents protected by the work product doctrine or "the accountant-client privilege." Mot. at 2. He also submits that the documents requested are "confidential, proprietary, trade secrets, or contain sensitive information," and he further specifies that the documents requested "contain very private, confidential, privileged and sensitive personal and financial information from Mr. Carter's current and/or former clients and/or association with the business entities referenced in the Subpoena." Id. Carter asks that, if the Court permits production of these documents, it "modify the subpoena and enter a protective order with regard to proprietary, confidential, private and sensitive" materials. Id.

The Government maintains that a protective order is unnecessary and that Carter has not properly laid the groundwork to request one. Resp. at 23. The Government represents that "[t]he majority of records sought . . . relate to the preparation of tax returns that are typically maintained in 'customer files' . . . ." Id. These documents are not privileged, and indeed 26 U.S.C. § 6107(b) requires a tax preparer to retain some of the information in customer files and to produce it to the Government on demand. Further, there is no recognized "accountant-client privilege." Id. at 24 (citing In re Grand Jury Proceedings, 220 F.3d 568, 571 (7th Cir. 2000); United States v. Arthur Young & Co., 465 U.S. 805, 817–819 (1984); Couch v. United States, 409 U.S. 322, 335 (1973)).

As to proprietary commercial information, the Government submits that there is no privilege doctrine that protects "business secrets." Resp. at 24. "[T]he Defendants' business practices are at issue in this case," notes the Government, and the Defendants themselves did not

object to requests for production of these documents. Id. Also, the Government argues that Carter's concerns about customer information are alleviated by Federal Rule of Civil Procedure 5.2's requirement that parties redact personally identifiable information from court filings.

The Court directs the Government and Carter to include provisions in their proposed stipulated order clarifying that Carter shall not be required to produce documents protected by any applicable privilege doctrine. The proposed stipulated order shall also provide for the protection of potentially sensitive commercial and personal material—for example, by identifying any such documents as for "ATTORNEY EYES ONLY." Carter and the Government shall abide by the requirements of Rule 5.2 and any other applicable rules protecting confidential information. To the extent that the Government and Carter cannot agree on any terms relating to the production of privileged or proprietary information, then they must submit a joint statement setting out their respective positions.

### E. Reasonable Time to Comply

Carter argues that the subpoena's original 20-day period for compliance fails to provide "a reasonable time to comply." Mot. at 9. Carter observes that compliance will require that he "hire part-time employees" and "request electronic files from [a] cloud based tax software company for all relevant tax years." Id. Carter notes that his own time is limited, as he "runs a home health care agency and does tax preparation on the side." Id. He has "limited availability" based on his work schedule and his responsibilities as a caregiver, especially given increased demands from his clients and employees given "restrictions due to the COVID-19 pandemic." Id.

The Government submits that its original requested timeframe of three weeks was reasonable. See Resp. at 22 (citing Franklin v. Howard Brown Health Ctr., No. 17 C 8376, 2018 WL 4590010, at *2, n.1 (N.D. Ill. 2018) ("Fed. R. Civ. P. 45(d)(2)(B) suggests that 14 days is the

benchmark for time for compliance [] and less than that is unreasonable.") (citation omitted)). Moreover, the Government granted Carter an additional two weeks and offered to discuss an additional extension. Id.

The Court directs the Government and Carter to confer regarding a reasonable time within which Carter shall produce documents in response to the Government's subpoena. They shall include a timetable for Carter's production in their proposed stipulated order, or—in the event that they disagree—set out their respective positions in a joint statement.

### III. CONCLUSION

For the foregoing reasons, Carter's motion to quash (Dkt. 33) is granted in part. As discussed above, the Government and Carter are directed to submit a proposed stipulated order setting forth (i) an arrangement for cost-sharing by which the Government bears reasonable costs of the production, (ii) procedures to ensure the protection of confidential information, and (iii) a timetable for Carter's compliance with the subpoena. If the Government and Carter cannot agree on any relevant points, then they shall submit a joint statement setting forth their respective positions. The proposed stipulated order or the joint statement shall be due by April 1, 2022.

SO ORDERED.

Dated: March 18, 2022  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge